# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| ANTHONY G. MERCIER, | Civil Action No.: _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **INJUNCTIVE RELIEF REQUESTED** |
| AMERICAN FIDELITY ASSURANCE COMPANY | (Jury Trial Demanded) |
| | 1:05-825-24 |
| Defendant. | |

NOW COMES the Plaintiff above-named, Anthony G. Mercier, and files this, his Complaint against the Defendant, American Fidelity Assurance Company and alleges and shows unto this Honorable Court as follows:

## JURISDICTION AND VENUE

1. That the Plaintiff herein is a citizen and resident of the State of South Carolina, County of Edgefield and is subject to and submits himself to the jurisdiction of the Court.

2. That the Defendant, American Fidelity Assurance Company, Inc., hereinafter Defendant, is a corporation organized and existing under the laws of the State of <u>Oklahoma</u> and doing business in Aiken County, South Carolina at all times alleged herein.

3. That Defendant is subject to the jurisdiction of this court and may be served with process through their registered agent: **Dale Morris; 1201 Peachtree Street, Atlanta, GA 30361**

4. All acts complained of herein occurred in Aiken County, South Carolina.

5. Jurisdiction and venue are proper in this Court.

6. At all times alleged herein the Defendant corporation acted through its agents,

servants and employees, who at all relevant times was acting within the scope of their employment with Defendant.

## **COURSE AND PATTERN OF DEALING BETWEEN THE PARTIES** 7

The allegations of paragraphs 1 through 6 are incorporated herein as if repeated verbatim.

8.  Anthony G. Mercier, Plaintiff, has been actively involved in the insurance industry since he was honorably discharged from military service in 1967.

9.  Plaintiff Mercier initially worked for different insurance companies but in 1974 became an independent agent and is still employed in that capacity.

10. Plaintiff Mercier operates primarily out of an office in Richmond County, Augusta, Georgia as Consumer Insurance Services and Associates.

11. Plaintiff Mercier is licensed to sell insurance in the states of Florida, Virginia, Georgia, South Carolina, Tennessee, Texas and Arizona.

12. As an independent agent, Plaintiff Mercier enters into producer agreements with different insurance companies which allows him to act as an agent or broker for many different companies.

13. Plaintiff Mercier entered into such a producer agreement on March 17, 2003, with Defendant herein.

14. Plaintiff Mercier's producer agreement with Defendant sets forth a general compensation schedule which applies to and determines Plaintiff's compensation for all policies written under the producer agreement with Defendant.

15. Upon information and belief Defendant American Fidelity is a member of IMSA

2

(Insurance Marketplace Standards Association), which is an organization of life insurance companies wherein the companies can come together to discuss the life insurance industry and the different issues that each company is facing.

16. Upon information and belief IMSA allows all of the member life insurance companies to communicate directly with each other.

17. Prior to beginning writing business for Defendant herein, Plaintiff contacted Defendant by letter and requested information from Defendant from its opinions on Plaintiff writing business with a group of individuals known as the "Irish Travelers."

18. Plaintiff had a connection with this group of individuals who live in a residential neighborhood in North Augusta, Aiken County, South Carolina and also in areas of Florida and Tennessee.

19. Plaintiff Mercier believed that he would be successful in writing this group of business but wanted to be sure that Defendant would not have a problem with him writing these individuals.

20. Plaintiff Mercier received back from Defendant the okay to write this business with the indication that Defendant would be glad to have the business of the Irish Travelers.

21. With that representation, Plaintiff set upon writing the business of the Irish Travelers not only in South Carolina, but also in Florida and in Tennessee.

22. Plaintiff was so successful in writing life insurance policies for Defendant herein that he was able to write over 60 policies for life insurance in about 6 months which totaled 5 million dollars in face value.

3

23. Without warning of any kind, Plaintiff received a letter in the mail dated May 13, 2004, from Defendant herein which indicated that his "appointment with American Fidelity Assurance Company is terminated effective June 13, 2004."

24. The letter from Defendant further indicated that depending on the results of their review of his business that his termination may be for cause and could be effective immediately.

25. Thereafter Plaintiff Mercier received a letter dated July 19, 2004, from Defendant herein indicating that his cancellation was being revised to reflect that he was canceled for cause effective immediately and that "according to paragraph 6.07 of your producer agreement, termination for cause results in any future vested compensation being forfeited."

26. As a result of being informed of this, Plaintiff wrote the Defendant herein on July 23, 2004, requesting the specific reason for his termination "for cause" and did not receive a response.

27. Plaintiff thereafter again wrote Defendant August 24, 2004, following up on his July letter further asking for information as to why his contract was terminated "with cause."

28. Plaintiff began to receive information from some of the 60 policy holders that he had written in the area that their insurance policies were being rescinded by Defendant herein.

29. Plaintiff's commissions on the business that he had written, which was either issued or pending, was approximately $185,000.00.

30. In its contention that he was terminated "for cause," Defendant ends Plaintiff's

4

right to collect on these written policies into the future as it terminates his vesting of commissions. These commissions would have been continuing pursuant to the commission schedule between the parties.

31. Ironically, Plaintiff Mercier was featured thereafter in the Winter 2004 AF Amerilife Achiever, a publication put out by Defendant herein; indicating that: *"The Spotlight is on Anthony Mercier, Sr."* The article states: *"Anthony "Tony" Mercier knows how to sell. He prides himself on being able to make a sell out of every situation and with over $185,001.00 of annualized premium, 68 cases, submitted year to date with AF Amerilife we have to believe him."*

32. The article goes on: *"Tony is a true big hitter,"* as indicated by a Divisional Sales Director for Defendant herein; *"He is a hard worker. I have known him a long time and he has been doing this for years."*

33. This article appeared after Plaintiff Mercier had been informed that his contract was being terminated with Defendant herein "for cause."

34. During the same time period, Plaintiff herein was informed by the State of Florida that the Department of Financial Services, Bureau of Investigation, had opened an investigation concerning his Florida insurance activities.

35. Upon information and belief, this investigation was begun because of information supplied by Defendant herein to the State of Florida.

36. Plaintiff was informed by Defendant herein that the applications that he had submitted contained "serious discrepancies" and as a result would have to be rescinded.

5

37. Upon information and belief, this statement is completely false.

38. Upon information and belief, this same type of false information was provided by Defendant to same or similar state departments in the State of South Carolina as well as Tennessee whereupon investigations in both of those states ensued against Plaintiff also.

39. Upon information and belief, the allegation that the business wrote for Defendant herein was canceled due to Plaintiff's contracts for insurance containing "serious discrepancies" is a ruse concocted by Defendant herein to rescind the contracts that Plaintiff had submitted based solely on the reason that Defendant did not want to write Irish Traveler business.

40. However, Plaintiff herein simply completed and submitted applications on a group of business.

41. Each application was reviewed by Defendant herein, each applicant supplied a complete medical history and submitted to physical exams, all of which were reviewed by Defendant herein, prior to Defendant herein issuing the policies in question.

42. Plaintiff was not responsible for the decision to issue these policies, Defendant was.

43. Upon information and belief Defendant herein has disparaged Plaintiff's good name within this industry to other life insurance companies causing Plaintiff's producer agreements with those companies, which bare no relationship to Plaintiff's producer agreement with Defendant herein, to be canceled based solely on the information that Defendant herein is providing.

44. These types of subsequent producer agreement cancellations have happened repeatedly.

45. Defendant seems intent on insuring that Plaintiff Mercier herein will not continue to work in the insurance industry.

46. Upon information and belief the investigation in the State of Florida has been closed in Plaintiff's favor with the finding that Plaintiff has committed no wrongdoing on any policy that was issued or attempted to be issued there.

47. Upon information and belief the investigation still pending in South Carolina and Tennessee remain open and are just getting under way.

48. The contract between the parties herein, i.e. the producer agreement, contained provisions binding on both the Plaintiff and the Defendant.

49. Plaintiff has fulfilled the terms and conditions which were his responsibility pursuant to the terms of the agreement between the parties.

50. The Defendant through its conduct herein has breached the agreement between the parties.

51. Plaintiff Mercier is under the belief that Defendant herein has canceled all of the more than 60 life insurance policies that he wrote as an agent under his producer agreement with Defendant.

52. Plaintiff Mercier believes that Defendant herein rescinded the policies in question not only in breach and in violation of his agreement with Defendant herein but also in breach and in violation of those separate insurance agreements with each of the insured parties and additionally in violation of South Carolina Insurance Law.

53. Upon information and belief, in order for an insurance company such as Defendant herein, to rescind a life insurance policy after it has issued the same and accepted premiums on the same, there are certain steps which require a court proceeding and a showing of a material change or misrepresentation in the risk to be insured in order to allow rescission of such a policy.

54. Upon information and belief none of the steps required by South Carolina Insurance Law were followed in the within cases in order to cancel or rescind the insurance policies that Plaintiff Mercier had written herein.

55. Upon information and belief, the members of IMSA and other unrelated insurance companies utilize a retail credit reporting agency known as VECTOR.

56. Upon information and belief, Vector is similar to Equifax or any other reporting agency but is a credit reporting agency which is specific to insurance companies and agents.

57. Any agent who attempts to write or enter into a producer agreement, which would allow writing for a specific insurance company, must have a clean VECTOR Report in order to receive a contract.

58. At this time, Plaintiff has a clean VECTOR report, which would allow him to be an agent or a producer under a producer agreement for other insurance companies.

59. Plaintiff herein has received a letter from Defendant indicating that it is seeking reimbursement from him for the charge backs of the policies that it canceled or rescinded that he had written while writing for Defendant herein.

60. The letter indicates that Defendant is seeking approximately $85,000.00 from

Plaintiff Mercier in repayment of commissions that he received on policies that although approved and written with premiums accepted on them, were later without cause rescinded by Defendant herein.

61. Plaintiff received a letter from Defendant herein dated December 27, 2004, indicating that Defendant intends to hire an attorney to collect the $84,008.80 which they are terming an "agent debit balance."

62. Upon information and belief, Defendant herein will report this alleged $84,008.80 "agent debit balance" to VECTOR if this money is not paid to Plaintiff immediately, and once this reporting is made to VECTOR Plaintiff will be unable to be employed in the insurance industry in any state.

63. If Defendant herein is allowed to report this alleged "agent debit balance" which is in controversy to VECTOR, Plaintiff Mercier herein will suffer immediate and irreparable harm.

64. Upon information and belief, as a result of Defendant's actions as set forth herein, Plaintiff has suffered damages in that Defendant has breached its contract with Plaintiff.

65. Upon information and belief based upon Defendant's actions as explained herein, Plaintiff Mercier has suffered damages as a result of Defendant breach of Plaintiff's contract accompanied by a fraudulent act.

66. Upon information and belief based on Defendant's actions as explained herein, Plaintiff Mercier has suffered damages as a result of Defendant's defamation of him within his industry.

67. Upon information and belief based on Defendant's actions as explained herein,

9

Plaintiff Mercier has suffered damages as a result of Defendant's tortious interference with his existing contractual relations and/or perspective contractual relations.

68. Upon information and belief based on Defendant's actions as explained herein, Plaintiff Mercier has suffered damages as a result of Defendant's violation of the covenant of good faith and fair dealing contained in every contract.

### FOR A FIRST CAUSE OF ACTION
### INJUNCTIVE RELIEF

69. The allegations of paragraphs 1 through 68 are incorporated herein as if repeated verbatim.

70. Plaintiff was employed by Defendant under the terms of a producer agreement to write insurance business for Defendant.

71. Pursuant to the terms of that producer agreement, Plaintiff wrote approximately 60 life insurance policies with Defendant Company over a 6 month period.

72. Plaintiff was able to generate approximately $185,000.00 in commissions in writing life insurance policies with approximately 5 million dollars in face value.

73. Upon information and belief Defendant herein set upon canceling and/or rescinding each and every one of these policies in violation of the agreement between the parties as well as South Carolina Insurance Law.

74. Defendant has now informed Plaintiff as of the end of December 2004, that he is immediately to repay to Defendant $84,008.80 in an alleged "agent debit balance" to bring his account to zero with Defendant herein.

75. Upon information and belief, if this amount is not paid immediately, Defendant will report this debit balance to the VECTOR reporting agency.

76. Upon information and belief, such a reporting will prohibit Plaintiff from being able to work within the insurance industry.

77. Plaintiff has been working in the insurance industry since 1967 and knows no other trade.

78. The amount of the alleged "agent debit balance" is an amount in controversy and the payment or nonpayment of this is a subject of this litigation.

79. To allow Defendant herein to report this alleged amount owed, which is the subject of this litigation, to VECTOR in order to keep Plaintiff from working for any other insurance agency during the pendency of this action will work immediate and irreparable harm on Plaintiff in the pursuit of his profession.

80. Such a reporting will effectively gut Plaintiff's ability to earn an income immediately.

81. Plaintiff is requesting that this Court grant him Injunctive Relief in the form of an Order which would enjoin Defendant herein from reporting any alleged "agent debit balance" to VECTOR or any other agency pending the outcome of this proceeding.

82. Such an Order of the Court would not prejudice any party to this action and would protect Plaintiff's rights pending the outcome.

### FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

83. The allegations of paragraphs 1 through 82 are incorporated herein as if repeated

11

verbatim.

84. Plaintiff's employed by Defendant under the terms of a contractual agreement.

85. Plaintiff was terminated under the producer agreement without warning and after writing a substantial amount of business with Defendant herein.

86. Prior to this, Plaintiff had performed his job in an exemplary fashion and had not been warned regarding anything with regard to his job performance.

87. Plaintiff had received no negative evaluations, warnings, write-ups from any one regarding his conduct.

88. In fact, Plaintiff had been hailed as a star performer in Defendant's industry publications for his efforts on behalf of Defendant.

89. Plaintiff is informed and believes that his continued ability to write insurance for Defendant was governed by a contract setting forth procedural rights and obligations between Plaintiff and Defendant, which gave Plaintiff an expectation of continued employment as long as he conducted himself in a manner to uphold his job responsibilities and duties.

90. Plaintiff is informed and believes that this contract, which is both written and implied, outlined duties, obligations and procedures binding on both the Plaintiff and Defendant.

91. Defendant breached this contract.

92. As a result of Defendant's breach, Plaintiff has suffered damages.

93. Based on the foregoing, Plaintiff is informed and believes he is entitled to damages from the Defendant for actual losses including lost commissions, both front and back commission, attorney's fees and costs, damages from mental

pain and anguish, and punitive damages to deter such conduct into the future.

## FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

94. The allegations of paragraphs 1 through 93 are incorporated herein as if repeated verbatim.

95. Plaintiff was employed by Defendant under the terms of a contractual agreement.

96. Plaintiff was terminated from his position without warning.

97. Prior to this Plaintiff had performed his job duties in an exemplary fashion and had not been warned regarding anything due to his job performance.

98. Plaintiff had received no negative evaluations, warnings, or write-ups from anyone regarding his conduct.

99. Plaintiff is informed and believes that his continue employment and continued ability to write life insurance with Defendant under that certain producer agreement was governed by a contract setting forth certain procedural rights and obligations between Plaintiff and Defendant, which gave Plaintiff an expectation of continued employment so long as he conducted himself in a manner to uphold his job responsibilities and duties.

100. Plaintiff is informed and believes that this contract, which was both written and implied, outlined duties, obligations and procedures binding on both the Plaintiff and Defendant.

101. Defendant breached his contract by deliberately, maliciously, falsely, and fraudulently alleging that Plaintiff had submitted applications with "serious

discrepancies," further that he was issuing replacement policies without notifying the company, both of which would be completely inappropriate within the industry, and that Defendant made these allegations in an underhanded effort to attempt to justify their breach and avoid paying Plaintiff the monies that he was entitled to now and into the future; as well as avoid their obligations under the contracts that had been issued.

102. That Defendant at the time it terminated Plaintiff told him that he was being terminated for cause but refused to give him any further information is evidence that the Defendant was aware of the falsity of the statements of misconduct that they later proffered as the reason for the breach and is also evidence of Defendant's fraudulent intent.

103. As a result of Defendant's fraudulent conduct, in its breach, Plaintiff has suffered damages.

104. Based on the foregoing, Plaintiff is informed and believes he is entitled to damages from the Defendant for actual losses including lost wages both front and back, attorney's fees and costs, damages for mental pain and anguish, and punitive damages to deter such future conduct.

### FOR A FOURTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH EXISTING AND
### PERSPECTIVE CONTRACTUAL RELATIONS

105. The allegations of paragraphs 1 through 104 are incorporated herein as if repeated verbatim.

106. After his termination, Plaintiff Mercier continued to work in the industry in order to support his family, as he has done since 1967.

14

107. Mercier has been and continues to write for various insurance companies as he has always done before as an independent agent.

108. Defendants then began publically telling individuals and companies, including different state agencies, that Plaintiff was committing serious violations in writing the policies in question.

109. These allegations have included anything from submitting policies with "serious discrepancies" which later caused the rescission of the policies or that he is writing replacement insurance without notifying the company that it is replacement insurance.

110. These allegations are serious breaches within the industry and the allegations are completely false.

111. The Defendant's actions herein were calculated to defame Plaintiff in its profession and has defamed Plaintiff in his profession.

112. This defamation has gone to a point that businesses that were doing work with Plaintiff Mercier, now have rescinded his producer agreements because of the allegations.

113. The Defendant's actions taken hereunder were done strictly with the intent of and for the purpose of harming Plaintiff.

114. In informing other people within the industry that Plaintiff was terminated for cause for serious violations of industry standards, Defendants have intentionally and tortiously interfered with Plaintiff's perspective and potential contractual relations and his ability to earn a living.

115. Defendants acted intentionally and/or recklessly and did so with an improper

15

purpose.

116. Defendant's actions, constitute the tortious interference with Plaintiff's existing and perspective contractual relations.

117. Based on the foregoing, Plaintiff is informed and believes that he is entitled to damages from the Defendants for actual losses including: lost wages, both and front and back, attorney's fees and costs, damages from mental pain and anguish, and punitive damages to deter such future conduct.

## FOR A FIFTH CAUSE OF ACTION
## DEFAMATION

118. The allegations of paragraphs 1 through 117 are incorporated herein as if repeated verbatim.

119. Defendant herein treated Plaintiff publically as if he were a common criminal by accusing him of committing acts, which would be prohibited within the insurance industry, and reporting him to different state agencies with false allegations in order to prompt criminal investigations into his conduct.

120. When Plaintiff was terminated he was given no reason but then Defendant publically maintained that Plaintiff was being terminated for cause and that he was committing acts which were in violation of applicable industry standards, and which constituted dishonest and criminal activity.

121. In fact these contentions of misconduct are blatant lies.

122. Defendant intended this implication or acted with specific disregard for the harm its actions would cause.

123. Defendant's actions were not necessary and created a false impression which

stigmatized the Plaintiff publically and within his profession.

124. The impression created by the Defendant through its actions defamed Plaintiff.

125. Defendant's above described conduct, constitutes defamation *per se*, in that the conduct of Defendant herein held Plaintiff up to disrepute within his profession and accused him of criminal activity.

126. As a result of Defendant's actions, Plaintiff has suffered damages.

127. Based upon the foregoing, Plaintiff is informed and believes that he is entitled to damages from the Defendant for actual losses including lost wages, both front and back, attorney's fees and costs, damages for mental pain an anguish and punitive damages to deter such future conduct.

## FOR A SIXTH CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

128. The allegations of paragraphs 1 through127 are incorporated herein as if repeated verbatim.

129. Implied in every contract entered into in South Carolina is a covenant that contracts will be administered fairly and in good faith.

130. Terminating Plaintiff in violation of the terms and conditions of the contract between the parties and doing so in such a bad faith manner as to allege serious misconduct on the part of Plaintiff, Defendant has violated the Covenant of Good Faith and Fair Dealing Between the Parties.

131. Upon information and belief, Defendant's actions herein were prompted for the nefarious purpose of refusing to write a group of business known as the "Irish Travelers" and as opposed to telling the truth about its intentions herein, i.e. that

it did not want this business and suffering the consequences, Defendant instead allowed Plaintiff to write the business and then blamed him for serious misconduct causing the rescission of all of the policies.

132. Defendant's actions in this violation were for the sole purpose of harming Plaintiff's reputation publically and within his business and to avoid the obligation that Defendant had to compensate Plaintiff on his efforts on behalf of Defendant.

133. Defendant's actions, as described herein, constitute a breach of the covenant of good faith and fair dealing contained in every contract and Defendant's breach has damaged the Plaintiff.

134. Based upon the foregoing, Plaintiff is informed and believes he is entitled to damages from the Defendant for actual losses including commissions, lost wages, both front and back, attorney's fees and costs, damages for mental pain and anguish and punitive damages to deter such future conduct.

WHEREFORE, Plaintiff prays:

(1) Injunctive Relief granting Plaintiff herein an Order which will enjoin the Defendant from reporting the alleged "agent debit balance," which is in controversy in this action, to the VECTOR reporting agency or any other entity pending the outcome of this action so that Plaintiff can continue to work and earn a living to support his family;

(2) That he receive actual damages including salaries, commissions, bonuses, back and front pay, lost benefits and loss of employment opportunity;

(3)  That he receive damages for his mental pain and anguish;

(4)  That he receive punitive damages in an amount sufficient to deter the Defendant from such further misconduct in the future;

(5)  That he receive attorney's fees, expert fees, and the costs of this action; and

(6)  For such other and further relief as this court may deem just and proper.

## CLAIM FOR JURY TRIAL

Comes now Plaintiff in his initial pleading before this Court and requests this Court grant him a trial by jury of all issues that would properly be submitted to a jury in this case.

ANDERSON & ANDERSON LLP

By: /s/ Kristina M. Anderson
KRISTINA M. ANDERSON
Federal ID No.: 6628

211 York Street, NE
Aiken, South Carolina 29801
(803) 648-6000

March 16th, 2005.